**STATE of North Dakota,
Plaintiff-Appellee,**

v.

**Vernon Ray OLMSTEAD,
Defendant-Appellant.**

Cr. No. 553.

Supreme Court of North Dakota.

April 29, 1976.

Rehearing Denied June 10, 1976.

David Kessler, Grand Forks, for defendant-appellant.

Thomas B. Jelliff, State's Atty., Grand Forks, for plaintiff-appellee.

PAULSON, Judge (on Reassignment).

The defendant, Vernon Ray Olmstead, was charged with the crime of "Rape in the first degree", using a knife to threaten immediate and great bodily harm to the victim, in violation of § 12–30–01(1) and (4), and § 12–30–04(2), N.D.C.C. He waived a jury trial, and was convicted and sentenced to five years' imprisonment. He has appealed and has moved for release pending the determination of the appeal. His motion, which was directed to the district court for release pending appeal, was denied.

The conviction was based upon identification by the victim of the rape about two weeks after the event. The defense was alibi. It is claimed that alibi witnesses who were not available at the time of trial are now available. Some of the confusion in an admittedly confused record is caused by the fact that the defendant hired the attorney who represented him at the trial; defendant's parents hired another attorney who made, and then withdrew, a motion for a new trial; and defendant's wife hired a third attorney, who appears for him in this court. A motion for a new trial made by the second attorney was withdrawn by him, over the objection of the third attorney, when a polygraph examination resulted in a report adverse to the defendant. The present attorney claims that the polygraph evidence was unreliable because of a brain injury suffered by the defendant as a child, resulting in atypical encephalogram readings and difficulties of comprehension in certain areas which make the polygraph readings unreliable. The defendant claims it was error for the court to permit the withdrawal of the motion for a new trial. The motion for a new trial was also based on the availability of additional alibi witnesses not available at the first trial.

■ In *State v. Stevens*, 234 N.W.2d 623 (N.D.1975), in syllabus paragraphs 2, 3, and 4, we held:

"2. After a defendant has been convicted, the presumption of innocence no longer applies; on the contrary, there is a strong presumption of guilt. Therefore, a convicted defendant is not entitled as of right to release on bail while the appeal is pending.

"3. As a general rule, a convicted defendant is entitled to release pending appeal unless it appears that (1) the appeal is frivolous, (2) the appeal is taken for

delay, (3) there is reason to believe the defendant might flee, or (4) the defendant poses a danger to others or to the community.

"4. The decision whether a convicted defendant should be released pending appeal is discretionary with the trial court."

In the instant case, the State apparently concedes that the appeal is not frivolous and is not taken for purposes of delay. Furthermore, the State does not dispute the conclusion that suitable conditions of release may be imposed which would reasonably assure that the defendant will not flee. However, the State strenuously contends that the defendant should not be released pending his appeal to this Court because there is sufficient reason to believe that the defendant poses a danger to others or to the community.

The district court did not hold a separate hearing on the defendant's motion for release pending appeal, and no separate order denying such motion was entered by the district court. Instead, the district court simultaneously considered the matter of sentencing and the matter of release pending appeal, and entered an order covering both. Such order, entitled "Statement of Reasons for Sentence of Imprisonment and Denial of Bail", reads as follows:

"The undersigned District Judge certifies that the reasons for the sentence of imprisonment imposed and denial of bail in the event of an appeal in the above-entitled action are shown in the following initialed Sentencing Factors:

"ACB 1.  The defendant's criminal conduct caused or threatened serious harm to another person.

"ACB 2.  The defendant did not act under strong provocation.

"ACB 3.  There were no substantial grounds which tended to excuse or justify the defendant's conduct.

"ACB 4.  The victim of the defendant's conduct did not induce or facilitate its commission.

"ACB 5.  The defendant's conduct was the result of circumstances likely to recur.

"ACB 6.  A current psychological evaluation pertaining to the character, history, and attitudes of the defendant indicate that he presents a picture of an individual who is extremely immature and becomes easily flustered under pressure. He is extremely naive, immature and inadequate. In addition he is extremely uncertain about his sexuality and is suspicious about the motives of others, and that he is likely to commit a similar crime.

"ACB 7.  The defendant is particularly unlikely to respond affirmatively to probationary treatment.

"ACB 8.  The defendant is neither elderly nor in poor health.

"ACB 9.  Confinement is necessary in order to protect the public from further criminal activity by the defendant.

"ACB 10.  It would unduly depreciate the seriousness of the offense to impose a sentence other than total confinement.

"Dated this 22nd day of January, 1976.

"[Signed] A. C. BAKKEN

"A. C. Bakken
"Judge of District Court"

It should be mentioned, in explanation of Item 6, that the psychological evaluation referred to contains all of the statements set forth in Item 6 except the last clause "that he is likely to commit a similar crime", which is a conclusory statement by the district judge.

Olmstead, in support of his motion for release pending appeal, offered the testimony of himself, his wife, and fellow workers from the Grand Forks Air Base and from his religious activity organizations. Olmstead's master sergeant testified that he would like to have Olmstead back in the organization; the head of a religious mission with which Olmstead had been active promised to continue to allow the defendant to work with him in mission work; a lieutenant in the Air Force said he would have no objection to having Olmstead back in his command; and a woman Air Force member who had worked with Olmstead in the same organization for two months said she would be pleased to have him again in the organization. The State called no witnesses and engaged in little cross-examination. However, the district judge, during the trial, also heard the testimony of the State's witnesses; reviewed the psychological reports previously submitted; and had the opportunity to observe Olmstead during the entire course of the trial. Such information is also properly considered when

determining whether or not the defendant should be released pending appeal. *State v. Jensen*, Crim.No. 554, 241 N.W.2d 557 (N.D. 1976); Rule 9(b), N.D.R.App.P.; Rule 46(d), N.D.R.Crim.P. The fact that Olmstead, his wife, and his fellow workers would not feel threatened by his release, although of value to the court in determining whether or not release pending appeal should be granted, is not conclusive that others, including the victim who testified against him, would not be in danger.

In an analogous situation presented to the United States District Court for the District of Columbia in *United States v. Thompson*, 294 F.Supp. 879 (D.D.C.1969), the defendant's motion for release pending appeal from a conviction of "armed rape" was denied, even though the defendant had family ties in the community and his prior criminal record was "not exceptional". The federal district court concluded that the present offense (armed rape) and the methods of its commission indicated a violent disposition which resulted in a danger to the complaining witness and to the public generally. The court noted that there were no restrictions which would guarantee that the defendant would not pose a danger to the community if released pending the disposition of his appeal.

■ In the instant case, we believe that the district court, based upon the record before it, was acting within its discretion in denying Olmstead's motion for release pending appeal. A similar petition made to this Court will be granted only in case of an abuse of discretion. *State v. Stevens, supra; State v. Schuler*, 236 N.W.2d 631 (N.D. 1975).

■ Although we would prefer that the district court separately state its reasons for granting or denying a motion for release pending appeal,[1] and include therein a clear statement of the factual basis for its action, we believe that the "Statement of Reasons for Sentence of Imprisonment and Denial of Bail" filed by the trial judge in the instant case shows that he considered all of the information placed before him and, in the exercise of sound discretion, denied Olmstead's motion.

■ In particular, we conclude that the nature of the crime, the violent method of its perpetration [which included the use of a knife], the lack of inducement or enticement by the victim, and the psychological evaluation showing that the defendant was an individual apparently unable to cope with his sexuality and that such pressures could result in the repetition of a similar episode, are important factors supporting denial of Olmstead's motion. Furthermore, as we said in *State v. Jensen*, Crim.No. 554, 241 N.W.2d 557 (N.D.1976):

> "We also take into account the fact that the trial judge had the opportunity . . . to observe the defendant and form an opinion as to his conduct."

We conclude that the record, when taken as a whole, establishes that there is "sufficient reason" to believe that the defendant, if released, would pose a danger to others or to the community.

The defendant's motion for release pending disposition of his appeal is therefore denied.

ERICKSTAD, C. J., and PEDERSON and SAND, JJ., concur.

VOGEL, Justice (dissenting).

I dissent.

I believe the majority opinion goes too far in taking for granted the guilt of the defendant. We said in *State v. Stevens*, 234 N.W.2d 623 (N.D.1975), that there is a strong presumption of guilt after conviction and pending appeal. But it is still a presumption and not a certainty.

I agree with the statement of Chief Judge Bazelon, of the District of Columbia Court of Appeals, dissenting in *United States v. Stanley*, 469 F.2d 576, 591 (1972):

---

1. Rule 9(b), N.D.R.App.P.; Rule 46(d), N.R.D.Crim.P.; *See United States v. Manarite*, 430 F.2d 656 (2d Cir. 1970).

"Certainly the act for which a person seeking release stands convicted is relevant in assessing whether the community's safety would be imperiled by release. Here, however, the substantial issues Stanley raises on appeal directly concern whether or not he committed the offense for which he was convicted. In such cases, unlike appeals where the fact of the offense is unchallenged, the inference to be drawn from the guilty verdict is more questionable. And, in Stanley's case, the inference is further attenuated by the almost total absence of prior criminal activity. His only other involvement with the law was a disorderly conduct charge in 1965 which resulted in a ten dollar fine."

In the case before us there is not even a disorderly conduct conviction or a ten-dollar fine. There is a total absence of a criminal record. Olmstead has never even had a traffic ticket.

I believe we have more reason to question the strength of the presumption of guilt where the conviction is based almost entirely upon an eyewitness identification made two weeks after the event. Many scholars and psychologists have commented on the high risk of error involved in eyewitness identification.[1] The risk rises with the delay.

It may be that upon a new trial, if granted, the effect of additional alibi witnesses will negative the identification testimony of the victim.

I think we should also realize, in connection with the identification of the defendant, a young man with a narrow face and a moustache, that the Air Force has regulations as to hair styles and moustaches, and that every Air Force base has hundreds of young men with narrow faces and similar hair styles and moustaches.

I believe that Olmstead could be released pending the appeal with little or no risk of danger to the community. There is no testimony, expert or otherwise, indicating that he represents a significant risk to the public. I would hold, as the Federal courts do (see n. 17, *United States v. Stanley, supra,* majority opinion, at 581), that the trial court must consider and, if feasible, utilize imposition of conditions of release which might reduce flight and danger to acceptable levels. In this case the United States Air Force could, and I believe would, give assurance that Olmstead would not leave the State while his appeal is pending, and his associates in his church could, and would, agree to supervise his off-duty activities. If such conditions were imposed upon his release, I think the danger to the public would be so slight as to be almost nonexistent. Even without such conditions, I believe the risk would be minimal.

We said in *State v. Stevens, supra,* at 625:

"It is impossible to lay down specific guidelines for release of persons who have been convicted of crimes and sentenced to imprisonment who choose to appeal the convictions. The facts of each crime differ and the nature of each defendant differs, and consequently the decision must be made in each case on its own facts."

In this case the defendant made an impressive showing that there would be no danger to the public upon his release, and the State took an almost passive attitude at the hearing, offering no evidence. If release is denied pending appeal in this case, I have difficulty conceiving of a case involving conviction of a serious crime where release will ever be allowed.

I would grant the motion for release pending appeal, subject to restrictions such as I have suggested above.

---

1. "Some of the most tragic miscarriages of justice have been due to testimonial errors in this field." Wigmore's *Principles of Judicial Proof* (2d ed. rev.; Boston: Little, Brown, and Company, 1931), p. 428. Wigmore gives many illustrations in § 209.